# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-65V

| | |
|---|---|
| CAPRICE ANGELICA MARCUM, | UNPUBLISHED |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: March 8, 2023 |
| | Interim Attorneys' Fees and Costs |
| Respondent. | |

*John Leonard Shipley*, Davis, CA, for Petitioner
*Austin Egan*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 21, 2020, Caprice Angela Marcum ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that she developed injuries including Guillain-Barré syndrome ("GBS") as a result of the Prevnar 13 vaccine she received on October 11, 2018. Pet. at 1.

Petitioner filed her First Motion for Interim Attorneys' Fees and Costs on August 28, 2022,

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

requesting a total of $87,853.83. ECF No. 36 at 2 (hereinafter "Fees Application" or "Fees App."). Respondent filed a response (hereinafter "Fees Resp.") on September 12, 2022, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. Fees Resp. at 4, ECF No. 37. Petitioner filed a reply (hereinafter "Fees Reply") on September 20, 2022, arguing that, in the absence of an objection from Respondent, Petitioner's requested fees and costs should be awarded in full. Fees Reply at 2, ECF No. 41. On January 13, 2023, Petitioner filed a Supplemental Affidavit of John L. Shipley (Ex. 60). In his supplemental affidavit, Mr. Shipley stated that in the Fees Application, he inadvertently understated his years of experience for purposes of calculating reasonable attorneys' fees but did not alter the amounts requested in the Fees Application. Ex. 60 at 3.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$84,288.03** in interim attorneys' fees and costs.

## I. Legal Standard

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL

1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id.*

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.     Discussion

### A.  Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). First, Petitioner's attorney has been working on Petitioner's case since June 2019. Ex. 55 at 2. Second, Petitioner has retained an expert at substantial cost. Ex. 56 at 17-18 (showing that Dr. Steinman has billed $29,150.00 so far in this case). This matter will shortly be scheduled for an entitlement hearing, which will likely take place in 2025. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where

4

proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 3-4. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted two expert reports from Lawrence Steinman, MD, who is board certified in neurology. Ex. 14 at 2. Dr. Steinman has theorized that the Prevnar 13 vaccine that Petitioner received caused Petitioner's GBS by means of molecular mimicry. Ex. 13 at 10-13. Dr. Steinman theorized that two components of the Prevnar 13 vaccine, phosphoglycerol and CRM protein conjugate, bear sufficient similarity to self antigens in myelin to cause an autoimmune reaction. *Id.* at 13, 27. The autoimmune attack on peripheral nerve myelin results in GBS. *Id.* at 34. This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioner requests a total of $56,225.80 in attorneys' fees.  Fees App. at 1.

#### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for

5

subsequent years.[3]

Petitioner's counsel, Mr. John Shipley, requests a rate of $330.00 per hour for work performed in 2019; $375.00 per hour for work performed in 2020; $410.00 per hour for work performed in 2021; and $425.00 per hour for work performed in 2022. Ex. 55 at 1.

Mr. Shipley also requests rates of $156.00 per hour for paralegal work performed in 2019; $163.00 per hour for paralegal work performed in 2020; $172.00 per hour for paralegal work performed in 2021; and $177.00 per hour for paralegal work performed in 2022. Ex. 55 at 1.

Although it does not affect my analysis of Mr. Shipley's fees, I will briefly address the supplemental affidavit that he filed in which he indicates that he originally understated his years of experience as an attorney for purposes of calculating reasonable fees. Ex. 60. Mr. Shipley argues that, having been admitted to the California bar in 2003, his years of experience should be calculated as one year in 2003, two years in 2004, three years in 2005, etc. *Id.* at 2. The California state bar website shows that Mr. Shipley was admitted on December 26, 2003.[4] The Attorney Fee Schedules break down reasonable hourly rates based on "years of experience practicing law, which generally will be calculated based on the year an attorney was admitted to the bar." *See, e.g.,* Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule: 2022 at 2. It is difficult to see how, in 2004, Mr. Shipley could have already had two years of experience despite having been admitted in the final week of 2003. Mr. Shipley's original statement of his experience, in which he had one year in 2004, two years in 2005, etc., was correct. *See* Ex. 58 at 5.

Turning to the reasonableness of his hourly rates, I note that Mr. Shipley is a relative newcomer to the Vaccine Program. A search of previous vaccine cases reveals only two reasoned decisions as to fee requests for his work. In *Miltenberger v. Secretary of Health & Human Services*, Special Master Moran analyzed market rates for attorneys in Davis, California, and concluded that Mr. Shipley is entitled to forum rates in the Program. No. 17-1491V, 2019 WL 7557794, at *4 (Fed. Cl. Spec. Mstr. Dec. 19, 2019). In *Ferguson v. Secretary of Health & Human Services*, Chief Special Master Corcoran reviewed a request for fees in which the hourly rates that Petitioner requested for Mr. Shipley's work were identical to those in the instant fee request. No. 19-1867V, 2022 WL 1421850, at *2 (Fed. Cl. Spec. Mstr. Mar. 25, 2022). The Chief Special Master analyzed Mr. Shipley's experience and concluded that a reduction was appropriate for Mr. Shipley's work

---

[3] The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

[4] Verified using the Attorney Search function at https://apps.calbar.ca.gov/attorney/Licensee/Detail/229739, last visited on March 1, 2023.

in 2020, 2021, and 2022, to $350.00 per hour, $375.00 per hour, and $400.00 per hour, respectively. *Id.*

Mr. Shipley requests an increase in the hourly rates awarded in *Ferguson*, citing additional experience in the Vaccine Program since that decision was issued (i.e., membership in the Vaccine Injured Petitioners' and Court of Federal Claims Bar Associations, conference attendance, and expansion of his vaccine caseload by six additional claims). Ex. 58 at 5-6. I note that his membership in the two bar associations began in 2019, which predates *Ferguson*. *Id.* at 6. Furthermore, Mr. Shipley requests an increase in his hourly rate to apply retroactively to work performed *before* he acquired additional experience. Accordingly, I do not agree that an increase is warranted at this time, and I will apply the same reduction to the request in this case as was applied in *Ferguson*, resulting in a total reduction of $2,141.00.

Finally, Mr. Shipley requests reimbursement for paralegal work he himself performed at the reduced rates listed above. As Special Master Moran noted in *Miltenberger*, "although the rates represent the highest possible rates for paralegals pursuant to the OSM fee schedules, because Mr. Shipley is an attorney performing these tasks it is expected that he would be able to perform them in a more efficient manner than an average paralegal." 2019 WL 7557794, at *4. Accordingly, I find Mr. Shipley's requested paralegal rates reasonable and conclude that no adjustment is warranted.

 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the

reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

   3. Clerical and Administrative Time

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

Mr. Shipley's invoice includes numerous examples of clerical and administrative tasks. The majority of these entries describe his efforts to obtain Petitioner's medical records from various providers, including inquiring about how to submit such requests and following up on requests already submitted. Examples include (but are not limited to):

- August 2, 2019, 0.4 hours: "Telephone call with Alva Chavez of Santa Clara Medical Center re obtaining records and recent correspondence rejecting request (.2); prepare additional forms and correspondence to obtain medical records from Santa Clara Medical Center."
- October 21, 2019, 0.1 hours: "Exchange emails and texts with National Healthcare Services re status of production of medical records."
- February 7, 2020, 0.2 hours: "Research internet and website regarding obtaining care records from Visiting Angels Care."

These administrative and clerical tasks total approximately 8.9 hours, resulting in $1,424.80 in charges. Accordingly, I find that a reduction in requested attorneys' fees of $1,424.80 is warranted.

Total attorneys' fees to be awarded: **$52,660.00.**

**D. Reasonable Costs**

Petitioner requests a total of $31,628.03 in costs, which includes obtaining medical records, the Court's filing fee, experts fees for Dr. Steinman, counsel's travel expenses, shipping costs, and copying charges. Ex. 56 at 1.

Specifically, Petitioner requests $946.85 for medical records requests; $400.00 for the Court's filing fee; $29,150.00 for expert reports; $381.98 for counsel's travel expenses; $218.29 for shipping; and $530.91 for copying charges. Ex. 56 at 1. Documentation was provided for the

8

medical record requests, the Court's filing fee, counsel's travel expenses, the shipping costs, and the copying charges, and these will be paid in full.

    1. <u>Petitioner's Expert Costs for Dr. Lawrence Steinman</u>

Petitioner requests an hourly rate of $550.00 for 53 hours of expert work performed in 2021 and 2022, for a total of $29,150.00.

Dr. Steinman received his medical degree from Harvard University in 1973. Ex. 14 at 1. Since 2008, he has held the G.A. Zimmerman Chair as professor of neurological sciences, neurology, and pediatrics. *Id.* Dr. Steinman is board certified in neurology. *Id.* at 2. Dr. Steinman has provided a full accounting of the hours he expended preparing and writing two expert reports totaling 69 pages in length. Ex. 56 at 17-18.

Although my colleagues and I have denied Dr. Steinman's request for an hourly rate of $550.00 in the past, more recent decisions have granted him this rate. *Baxter v. Sec'y of Health & Hum. Servs.*, No. 16-922V, 2023 WL 2320342, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 14, 2023) (granting $550.00 per hour for Dr. Steinman's work performed in 2021 and 2022 and reducing his requested rate prior to 2021 to $500.00 per hour); *Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (granting $550.00 per hour for Dr. Steinman's work performed in 2021 and 2022); *Mason v. Sec'y of Health & Hum. Servs.*, No. 17-1383V, 2022 WL 4693380, at *3 (Fed. Cl. Spec. Mstr. Sept. 8, 2022) (finding that Dr. Steinman's "demonstrated experience with the Vaccine Program has recently been deemed grounds for a slight rate increase" from $500.00 per hour to $550.00 per hour); *Anderson v. Sec'y of Health & Hum. Servs.*, No. 20-440V, 2022 WL 3151737, at *3 (Fed. Cl. Spec. Mstr. July 13, 2022) (finding that "Dr. Steinman's expertise in the medical field and long-standing participation in the Vaccine Program" justified an hourly rate of $550.00 even though this was higher than the $500.00 "informal cap on expert fees" in the Program).

Accordingly, I find that Dr. Steinman's requested rate of $550.00 is consistent with what he has been awarded for work performed in 2021 and 2022. I therefore grant Dr. Steinman's costs in full.

Total costs to be awarded: **$31,628.03.**

### III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

> A lump sum in the amount of **$84,288.03**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Mr. John Shipley.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.